JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CHRISTOPHER H. LISTER,

        Petitioner

        v.

SANDRA GATT,

        Respondent.

Case No. 5:21-cv-00957-VBF (GJS)

ORDER DISMISSING PETITION
WITHOUT PREJUDICE

        Petitioner was convicted of federal crimes and is currently incarcerated within this District at the Santa Ana Jail.  The Clerk's Office received a putative 28 U.S.C. § 2241 petition from him on June 7, 2021, which was filed and assigned to the undersigned (Dkt. 1, "Petition").  The Court has screened the Petition[1] and considered Petitioner's allegations and claims carefully.  Based on its review, the Court concludes that summary dismissal of this action, without prejudice, is required, for the reasons set forth below.

**BACKGROUND**

        Pursuant to Rule 201 of the Federal Rules of Evidence, the Court takes judicial notice of

---

[1]     Habeas petitions brought pursuant to Section 2241 may be subjected to the same screening requirements that apply to habeas petitions brought pursuant to 28 U.S.C. § 2254.  *See* Rules 1(b) and 4 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254 (a district court may "apply any or all of these rules" to any habeas petition, and mandating that a district court dismiss a petition without ordering a responsive pleading where "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief"); *see also Bostic v. Carlson*, 884 F.2d 1267, 1269-70 (9th Cir. 1989) (affirming district court's dismissal of a Section 2241 petition under Habeas Rules 1(b) and 4); Local Rule 72-3.2 (authorizing magistrate judge to prepare for district judge proposed order for summary dismissal and proposed judgment if it plainly appears from the face of the habeas petition that the petitioner is not entitled to relief).

the federal dockets and filings available through the PACER system.  These records show that in this District, in Case No. 5:10-cr-00058-VAP (the "Criminal Case"), Petitioner pled guilty to having violated 18 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C) (the "Conviction").  On April 15, 2013, he was sentenced to a total sentence of 168 months to be followed by three years of supervised release (the "Sentence").  Petitioner's appeal of his Conviction and Sentence was not successful.  [*See* Criminal Case Docket No. 210.]

On April 22, 2015, Petitioner filed a motion under 28 U.S.C. § 2255 to vacate the Sentence, asserting that his trial counsel had provided ineffective assistance in numerous respects. That motion was denied on September 1, 2015, with a finding that Petitioner's ineffective assistance claims were "without merit."  [Criminal Case Docket No. 218.]  Petitioner appealed, and his appeal was not successful.  [*See id.* Docket 230.]

While the above appeal was pending, Petitioner filed a request to reduce his sentence based on "Amendment 782," evidence not before the Court at sentencing, and his asserted post-conviction rehabilitation.  [Criminal Case Docket No. 229.]  On November 14, 2017, the motion was denied, with a finding that a reduction in Petitioner's sentence was not warranted.  [*Id.* Docket No. 243.]

On July 30, 2018, Petitioner filed a motion for a writ of audita querela, alleging that his trial counsel and the prosecutor had lied in both pre-conviction and habeas proceedings regarding a "critical document."  On October 30, 2018, the motion was denied, with a finding that Petitioner was seeking successive Section 2255 relief without having first obtained authorization from the Circuit Court.  [*See* Criminal Case Docket Nos. 245, 249, 251.]  On November 13, 2018, Petitioner filed a motion pursuant to Fed. R. Civ. P. 60(b) seeking "relief from final judgment," which made the same arguments as his audita querela motion.  On November 27, 2018, the motion was denied for the same reasons set forth in the October 30, 2018 Order.  [*Id.* Nos. 254-255.]  On December 26, 2018, Petitioner filed a motion to amend his Section 2255 motion filed and denied over three years earlier.  On January 30, 2019, the motion was denied for the same reasons set forth in the orders denying the above two motions.  [*See* Criminal Case Docket Nos. 256, 258.] Petitioner appealed the denial of his motion to amend, but his appeal failed, as did his motion for

1   reconsideration.  [*See id.*, Nos. 260-262.]

2       On June 21, 2019, Petitioner filed a second motion to reduce his sentence pursuant to 18

3   U.S.C. § 3582(c)(2).  On July 5, 2019, the motion was denied, with the Court again exercising its

4   discretion to decline to reduce Petitioner's sentence.  [*See* Criminal Case Docket Nos. 263-264.]

5   Petitioner appealed, and on February 10, 2020, the United States Court of Appeals for the Ninth

6   Circuit affirmed.  [*Id.* Docket No. 269.]

7       On April 13, 2020, Petitioner filed an "emergency request" to have his sentence modified,

8   citing the COVID-19 pandemic, and asking to be released to his home on supervised release for

9   the duration of his sentence.  On April 14, 2020, the motion was denied with a finding that

10  Petitioner had not exhausted his administrative remedies or demonstrated that any exception to the

11  exhaustion requirement was warranted.  [*See* Criminal Case Docket Nos. 271-272.]

12      Two days later, Petitioner filed a second "emergency request" to have his sentence

13  modified, citing both the COVID-19 pandemic and his pending transfer to another facility.  On

14  April 27, 2020, the motion was denied with a finding that Petitioner had not exhausted his

15  administrative remedies or demonstrated why the pending transfer justified compassionate release.

16  [*See* Criminal Case Docket Nos. 273-274.]

17      Almost five months passed.  On September 22, 2020, Petitioner filed a request to reduce

18  his sentence to time served.  Petitioner noted that the Bureau of Prisoner ("BOP") had placed him

19  on home confinement but that home confinement rendered it difficult for Petitioner to care for his

20  mother and prevented him from seeking employment opportunities and participating in

21  rehabilitation programs.  Following briefing, on December 9, 2020, the motion was denied with a

22  finding that Petitioner had not exhausted his administrative remedies.  [*See* Criminal Case Docket

23  Nos. 278, 287.]

24      Two months later, Petitioner filed a fourth request to reduce his sentence, asserting

25  essentially the same arguments made in his prior motion.  Following briefing, on March 31, 2021,

26  the motion was denied on the ground that, although Petitioner had exhausted his administrative

27  remedies by submitting a motion for compassionate release to the warden that went unanswered

28  within 30 days, Petitioner had failed to demonstrate extraordinary and compelling reasons to

3

1    reduce his sentence.  [*See* Criminal Case Docket Nos. 288, 292.]

2          According to the Federal Bureau of Prisons ("BOP") website, Petitioner's projected

3    release date is June 28, 2025.

4

5                              **PETITIONER'S CLAIMS**

6          The Petition alleges the following three grounds for relief:

7          *Ground One* asserts that Petitioner's "harsh housing conditions" warrant a reduction in his

8    sentence.  Petitioner alleges that after the COVID-19 pandemic commenced, defendants who were

9    convicted of "similar offences" received "vastly lower sentencing recommendations" than he

10   received when he was sentenced in 2013.  Petitioner labels this "an unwarranted disparity" and

11   apparently believes that his sentence therefore should be reduced.  He also alleges that:  after the

12   pandemic commenced, the private prison camp at which he was incarcerated closed; he was

13   transferred to FCI-Mendota, a medium security facility located outside of this District; he was at

14   FCI-Mendota for three months; while there, he was under 24/7 lockdown and could not take

15   showers or use the phone or email; toward the end of this three month period, he was sent to the

16   Special Housing Unit ("SHU") for quarantine, before he was furloughed to home confinement[2];

17   and the SHU normally is used for punishment and has a limited Commissary selection.  Petitioner

18   contends that, because conditions at FCI-Mendota were harsher than those he experienced at the

19   prison camp, his 12 weeks spent incarcerated at FCI-Mendota should count toward his sentence as

20   30 months served and reduce his sentence accordingly.

21         *Ground Two* involves the First Step Act and credits allegedly not awarded to Petitioner.

22   He asserts that he qualifies for the credit benefits available under the First Step Act, because he

23   has been found to be low risk and has engaged in "extensive" unidentified programming.

24   Petitioner complains that the credits owed to him were not calculated due to the closure of the

25   prison camp from which he transferred to FCI-Mendota.  Petitioner believes that he the First Step

26   ─────────────

27   [2]      Petitioner alleges that he received home confinement pursuant to the CARES Act.  As a
     result, the BOP was required to place him in a mandatory 14-day quarantine before releasing him
28   to home confinement.  *See* March 26 and April 3, 2020 Memoranda of the United States Attorney
     General, available at https://www.bop.gov/coronavirus/faq.jsp.

Act credits he is entitled to receive for this unidentified "programming" are sufficient to shorten his release date by almost three and a half years   namely, from August 2025 to March 2022   and that when the additional 18-month shortening of his sentence sought by Ground One is applied, this qualifies him for immediate release from incarceration.

*Ground Three* involves an asserted violation of Petitioner's due process rights in connection with his return to custody from home confinement, following a urine test that was positive for alcohol metabolites. Petitioner contends that the test used was "hyper-sensitive." Petitioner submitted evidence to explain the results, which he contends established reasonable doubt, but personnel he met with at the halfway house would not discuss it with him and stated that it was up to the BOP to decide what to do. At a subsequent meeting with his case manager, Petitioner was told that the BOP was remanding him into custody and when he asked about his evidence and receiving a disciplinary hearing, he was told that "none of that mattered." Petitioner was placed at Santa Ana Jail ("Jail") and spent 17 days in solitary confinement. Although Petitioner had received his first Moderna vaccination shot, the Jail does not provide Moderna vaccinations, so he has signed up to get the Johnson & Johnson vaccine when it is available at the Jail. The conditions at the Jail are "harsh," including an 18-22 hours a day lockdown and haphazard cell release schedules due to Jail staffing issues.

As relief, Petitioner asks the Court to commute his sentence to time served, and order that he be released immediately and commence his period of supervised release.

## DISCUSSION

Federal courts have an independent obligation to examine their own jurisdiction and may not entertain an action in which jurisdiction is lacking. *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000). For federal prisoners wishing to challenge matters related to their sentences through habeas-type means, there are two statutory bases for federal district court jurisdiction: 28 U.S.C. § 2241 ("Section 2241"); and 28 U.S.C. § 2255 ("Section 2255").

A Section 2241 habeas petition may be filed by a federal prisoner to attack the "execution of his sentence," but not to attack its validity. *White v. Lambert*, 370 F.3d 1002, 1009 (9th Cir.

2004); *Hernandez*, 204 F.3d at 864.  A motion under Section 2255 generally is the exclusive mechanism   outside of a direct appeal   by which a federal prisoner may challenge the validity or legality of his sentence.  *See Muth v. Fondren*, 676 F.3d 815, 818 (9th Cir. 2012); *Harrison v. Ollison*, 519 F.3d 952, 955 (9th Cir. 2008).

This action is brought under Section 2241.  Much of the substance of Petitioner's claims are not cognizable under Section 2241, however, because he does not raise any matter related to the execution of his sentence.  For example, the bulk of Ground One rests on Petitioner's complaints about the conditions of his confinement at FCI-Mendota   an institution that is not located within this District's jurisdictional boundaries.  Ground Three rests, in substantial part, on Petitioner's complaints about the "harsh" conditions at the Jail, where he is incarcerated currently.  While this District would be the correct venue for Petitioner's complaints about the conditions of confinement at the Jail (unlike Petitioner's FCI-Mendota related complaints), these complaints also are not cognizable in habeas review.

Challenges to a prisoner's allegedly unconstitutional conditions of confinement must be brought through a civil rights action, rather than through a habeas corpus petition.  *See Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991); *see also Hill v. McDonough*, 547 U.S. 573, 579 (2006) ("[a]n inmate's challenge to the circumstances of his confinement" must be brought through a civil rights action); *Muhammad v. Close*, 540 U.S. 749, 750 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . . ; requests for relief turning on circumstances of confinement may be presented in a § 1983 action.") (cit. om.).  A civil rights action is the "proper remedy" for a prisoner "who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973); *see also Ramirez v. Galaza*, 344 F.3d 850, 859 (9th Cir. 2003) (habeas jurisdiction is lacking, and a civil rights action instead is appropriate, "where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence").  "[C]onstitutional claims that merely challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of that core [of habeas relief]" and, instead, should be brought as a civil rights claim "in the first

1    instance." *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).

2          While Petitioner appears to believe that his complaints about the conditions of his

3    confinement in another District allow him to shave a year and a half off his sentence, he is

4    mistaken.  His remedy for having been subjected to unconstitutional conditions of confinement

5    was to pursue his relevant administrative remedies with the BOP to attempt to rectify the situation,

6    and if after doing so, he remained unsatisfied, to pursue a civil suit, such as a *Bivens* or other civil

7    claim.[3]  Petitioner's attempt to invoke habeas jurisdiction by seeking a sentence reduction based

8    on the past and/or current conditions of his confinement complaints lacks any legal basis and does

9    not bring these civil rights-type claims within the scope of Section 2241 jurisdiction.

10          The same conclusion follows as to Petitioner's Ground One allegation that, due to the

11   COVID-19 pandemic, defendants sentenced for similar offenses have received lighter sentencing

12   recommendations than he did, and his attendant belief that his sentence should be reduced as a

13   result.  Whether or not any other defendants who committed the same crimes have received lighter

14   sentences, this has nothing to do with the execution of Petitioner's sentence and therefore does not

15   implicate Section 2241 jurisdiction.  If Petitioner believes that he is entitled to have his sentence

16   reduced based on the sentences that others have received, he should take that issue up with the

17   sentencing judge, whether pursuant to 18 U.S.C. § 3582(c)(1) or otherwise.

18          The allegations of Ground One and a substantial portion of Ground Three of the Petition

19   complain about the conditions of Petitioner's confinement and are not cognizable in Section 2241

20   habeas review.  Therefore, they cannot be considered any further.  In contrast, Petitioner's Ground

21   Two complaint that he has been deprived of the benefit of First Step Act-related credits that would

22   entitle him to an earlier release if properly calculated and awarded, and his Ground Three

23   complaint that he has been remanded into custody without receiving a disciplinary hearing, do

24   implicate the types of matters that might be cognizable under Section 2241 if the claims has been

25   pleaded properly.  Ground Two, however, is particularly deficient at stating any viable habeas

26

27   _____
     [3]      *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S.
28   388 (1971), which applies when civil rights-type claims based on asserted deprivations of
     constitutional rights are asserted against federal officials.

1    claim, given Petitioner's failure to allege any *fact* that could serve as a basis for finding that he

2    actually has suffered a loss of First Step Act-related credits to which he is entitled.  For example,

3    Petitioner does not identify the "programming" he has completed, nor does he show that it falls

4    within the scope of the First Step Act's earned time credit incentives, qualifies as the requisite

5    "evidence-based recidivism programs and/or productive activities," and actually computes to

6    almost two and a half years of credits.[4]  And while Petitioner complains that he did not receive a

7    disciplinary hearing before being returned to custody from home confinement, it is not clear that

8    the events he describe required the full panoply of due process protections attendant to the

9    imposition of prison discipline before he could be returned to BOP custody.

10          While it is possible that Petitioner could rectify these pleading defects with respect to

11   Ground Two and the identified portion of ground Three, the Court nonetheless will not consider

12   these claims, because Petitioner admits hat he has not exhausted them.  [*See* Petition at 2, in which

13   Petitioner states that he has not appealed, filed a grievance, or sought an administrative remedy.]

14   For federal prisoners such as Petitioner, the BOP has in place an administrative remedy procedure

15   by which inmates can seek formal review of their complaints regarding any aspect of

16   imprisonment.  Generally, the procedure requires a prisoner to submit a specified series of

17   administrative remedy requests and forms upward through the "final administrative appeal" that

18   _____

19   [4]      Not all programming by federal inmates qualifies to serve as a basis for earned time credits
20   under the First Step Act, which can be applied to move up an inmate's release date.  For example,
     it appears that only the programming specifically included within the BOP's First Step Act
21   Approved Programs Guide and which has been assigned to an inmate following his First Step Act-
     related risk assessment analysis can serve as a basis for awarding earned time credits.  *See* 18
22   U.S.C. §§ 3621(b)(1)(A), 3621(h)(1), and 3632(b) & (b)(1); *see also, e.g., Butler v. Bradley*, No.
     CV 20-11211-DMG (RAO), 2021 WL 945252, *4 (C.D. Cal. Feb. 22, 2021); *Kurti v. White*, No.
23   1:19-cv-2109, 2020 WL 2063871, at *4 (M.D. Pa. April 29, 2020).  In addition, there are
     limitations on the number of hours of earned income credits an inmate may accrue and on how
24   they are calculated, which is not on a one-for-one basis and at most can result in earning 15 days
     of credits for every 30 days of qualifying programming.  *See* 18 U.S.C. § 3632(d)(4)(A)(i)-(ii).
25   Petitioner's claim to have accrued First Step Act credits equaling 29 months or so of credits would
     require that he have completed at least five years of qualifying programming, *i.e.*, since a date
26   before the First Step Act even was enacted.  To date, the courts have not found that credits are
     required for programming completed before the First Step Act went into effect.  *See, e.g., Hare v.*
27   *Ortiz*, No. 20-14093 (RMB), 2021 WL 391280, at **8-9 (D. N.J. Feb. 4, 2021); *Kurti*, 2020 WL
     2063871, at *4.
28

renders a claim administratively exhausted.  *See* 28 C.F.R. §§ 542.10, 542.13-542.15; *Nigro v. Sullivan*, 40 F.3d 990, 992 (9th Cir. 1994).  With respect to administrative exhaustion and Section 2241 petitions:

> Under the doctrine of exhaustion, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed . . . remedy has been exhausted."  *McKart v. United States*, 395 U.S. 185, 193, 89 S. Ct. 1657, 23 L.Ed.2d 194 (1969) (citation and internal quotation marks omitted). Exhaustion can be either statutorily or judicially required.

*Laing v. Ashcroft*, 370 F.3d 994, 997-98 (9th Cir. 2004).

Section 2241 does not contain an exhaustion requirement, and thus, exhaustion is not a jurisdictional prerequisite.  *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990).  For prudential reasons, however, federal courts require Section 2241 petitioners to exhaust their administrative remedies prior to seeking habeas relief.  *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012); *see also Singh v. Napolitano*, 649 F.3d 899, 900 (9th Cir. 2011).  Requiring a petitioner to exhaust his administrative remedies aids "judicial review by allowing the appropriate development of a factual record in an expert forum," conserves "the court's time because of the possibility that the relief applied for may be granted at the administrative level," and allows "the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings." *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983) (*per curiam*).  Dismissal is appropriate when a federal prisoner has not exhausted the administrative remedies made available by the BOP. *Martinez v. Roberts*, 804 F.3d 570, 571 (9th Cir. 1986) (*per curiam*).

Courts have discretion to waive the exhaustion requirement when administrative remedies are inadequate or their exercise would be futile, or irreparable injury would result without immediate judicial intervention.  *See, e.g., Ward*, 678 F.3d at 1045; *Laing*, 370 F.3d at 1000; see also *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 542 n.3 (9th Cir. 2004).  Although "courts have discretion to waive the exhaustion requirement when prudentially required, this discretion is not unfettered."  *Laing*, 370 F.3d at 998; *see also Murillo v. Mathews*, 588 F.2d 759, 762, n.8 (9th Cir. 1978) ("Although the '(a)pplication of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion,' it is not lightly to be disregarded.") (citation

omitted).  A "key consideration" in exercising such discretion is whether "'relaxation of the requirement would encourage the deliberate bypass of the administrative scheme.'"  *Laing*, 370 F.3d at 1000 (citation omitted).

Petitioner does not claim to have commenced, much less completed, the administrative review process with respect to his present habeas claims; indeed, he admits he has not done so. Petitioner, of course, was fully aware of the exhaustion requirement before he filed the Petition, given that several of his compassionate release motions were denied based on his failure to exhaust his administrative remedies.[5]  Thus, in this instance, waiving the exhaustion requirement would encourage deliberate bypass of the administrative remedy scheme within the meaning of *Laing*'s caveat.  Moreover,  Petitioner's complaint that First Step Act credits have not been calculated and awarded, and his complaint that he should be receiving a disciplinary hearing, are the very types of matters that should be raised with the BOP in the first instance before a prisoner heads to federal court to afford the BOP the chance to rectify the situation if warranted.  The assessment of whether a prisoner's programming qualifies for earned time credit status under the First Step Act and, if so, to what extent, as well as how it affects his sentence, falls particularly within the BOP's expertise and should be undertaken by the agency before a federal court is asked to make such assessment and calculations on an undeveloped, indeed non-existent, record.  If Petitioner's complaints are raised through the administrative review process, the BOP then will be afford the chance to provide relief and, if none is forthcoming, to explain why.  In either instance, it would be prudent to require that Petitioner raise his claims with the BOP and exhaust them before seeking federal habeas relief.

The Court concludes that this is a situation in which the administrative exhaustion requirement should not be waived and that Petitioner's failure to exhaust warrants dismissal. Accordingly, IT IS ORDERED that:  the Petition is dismissed without prejudice; and Judgment shall be entered dismissing this action without prejudice

---

[5]     Petitioner was found to have exhausted his administrative remedies with respect to the issues and arguments raised in his most recent compassionate release motion, but those issues and arguments are not the same as the claims raised through the Petition.

1

2      DATED: September 22, 2021                /s/ Valerie Baker Fairbank

3                                              _____
                                               VALERIE BAKER FAIRBANK
4                                              UNITED STATES DISTRICT JUDGE

5

6      PRESENTED BY:

7

8      _____
       GAIL J. STANDISH
9      UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28